**SO ORDERED.**

**SIGNED this 17th day of September, 2021.**



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

Designated for online use but not print publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

In re:

Bear Communications, LLC,

Debtor.

Case No. 21-10495-11

**Memorandum Opinion and Order
Granting Application to Employ Counsel**

The Official Committee of Unsecured Creditors (the "Committee") of Debtor Bear Communications, LLC seeks to employ counsel, retroactively effective to the date of the law firm's retention. Multiple parties object to the application to employ, including the United States Trustee. Because the

Court concludes the standards for employment of professionals under 11 U.S.C. § 1103[1] have been met, the Court grants the application to employ.

## I. Procedural Background

Debtor filed its Chapter 11 bankruptcy petition on May 28, 2021, and on June 29, 2021, the United States Trustee formed the Committee under § 1102.[2] The Committee members are (1) Advance Business Capital, LLC dba Triumph Business Capital; (2) Erica Burnette; (3) Eagle Capital Corp.; (4) KLJ Engineering, LLC, fka Kadrmas, Lee & Jackson, Inc.; (5) Poblocki Paving Corp.; (6) RC Underground, LLC; and (7) Verizon Sourcing, LLC.[3] Early in Debtor's case, significant issues arose with respect to the use of cash collateral, payment of critical vendors, and other matters. Shortly after the Committee was formed, potential counsel, not yet retained, filed pleadings in the case to preserve the Committee's rights in early disputes.[4]

About a week after the Committee was formed, on July 6, 2021, Debtor filed a motion to remove creditor Verizon Sourcing, LLC from the Committee,[5] and a hearing was set on the motion on an expedited basis.[6]

---

[1] Future statutory references are to title 11, the Bankruptcy Code, unless otherwise stated.
[2] Section 1102 directs the United States Trustee to "appoint a committee of creditors holding unsecured claims" in Chapter 11 cases and provides the procedure for that process.
[3] Doc. 116.
[4] Doc. 120.
[5] Doc. 131.
[6] Doc. 133, Doc. 141.

Debtor's largest secured creditor, Central Bank of the Midwest, and a large unsecured creditor who was also a member of the Committee, Advance Business Capital LLC, joined in Debtor's motion,[7] while the United States Trustee and Verizon Sourcing, LLC opposed.[8] Debtor listed a "claim against Verizon" for $12,250,946 for breach of contract in its Schedules[9] and an unliquidated, disputed claim by Verizon for $43,969,599.88,[10] and argued a conflict of interest existed with having Verizon Sourcing, LLC on the Committee. Counsel for the Committee appeared at the hearing on the motion and provided information for the Court. Ultimately, on July 14, 2021, the Court denied the motion to remove Verizon Sourcing LLC from the Committee, without prejudice.[11] The Court concluded Debtor had not carried its burden to show "change is necessary to ensure adequate representation of creditors" under § 1102(a)(4).[12]

A few weeks thereafter, on August 9, 2021, the Committee filed its application to employ counsel.[13] In that application, the Committee reported

---

[7] Doc. 144, Doc. 149.
[8] Doc. 148, Doc. 147.
[9] Doc. 80 p.15.
[10] Doc. 80 p.108. On August 31, 2021, Verizon Sourcing, LLC filed a proof of claim for a net unsecured, non-priority claim of $59,439,009.70, with additional recovery to be sought for unliquidated obligations and attorneys' fees. Proof of Claim No. 135-1.
[11] Doc. 151.
[12] Doc. 153.
[13] Doc. 197.

3

that it had selected the Dentons law firm[14] as its counsel on July 4, 2021 and requested retroactive appointment to that date. The Dentons firm proposed compensation at its ordinary rates, subject to a 20% discount. The proposed rates are: James Irving, partner at $408/hr, Sam Alberts, partner at $832/hr, Robert Hammeke, partner at $492/hr, Christopher Madden, associate at $276/hr, David Cook, associate at $484/hr, Gina Young, associate at $224/hr, and Jennifer Weber, paralegal at $160/hr. The application also noted that Dentons reserved the right to recover the 20% reduced fee if recovery and distributions "support such recovery."[15]

The declaration in support of the application to employ indicated Dentons completed a conflicts check of Debtor, Debtor's equity owner, Debtor's secured creditors, Debtor's twenty largest unsecured creditors, and the creditor members of the Committee. The law firm found two connections: (1) attorneys at Dentons previously represented one of Debtor's large unsecured creditors in an unrelated matter; and (2) attorneys at Dentons currently represent "Verizon" in an unrelated matter.[16] Dentons reported: "out of an abundance of caution, Dentons has erected an ethical screen

---

[14] The Committee proposes the use of Dentons as shorthand for attorneys from Dentons Bingham Greenebaum LLP and Dentons US LLP, both member firms of the Dentons Swiss Verein.
[15] Doc. 197 p. 7.
[16] Doc. 197 p. 15.

4

between professionals representing the Committee and those representing Verizon. Dentons plans to assert the Committee's position with respect to any dispute involving Verizon, though the Committee may need to engage conflicts counsel to litigate an adversary proceeding directly against Verizon."[17]

Multiple objections were filed to the application to employ. Generally, objections were to three aspects: (1) that the Dentons law firm had a conflict of interest because of its representation of Verizon on other matters; (2) the proposed rates and compensation were too high and would cause a diminished distribution to creditors and other terms of employment were unacceptable; and (3) no extraordinary circumstances were present to permit retroactive employment.[18]

The Committee then supplemented its application to employ with a new declaration, giving significantly more detail. The law firm colloquially known as "Dentons," is a broad enterprise. The firm uses a Swiss Verein structure, with multiple law firms in the United States providing their own

---

[17] *Id.*
[18] The objections are highly summarized in the text. Details are within Doc. 238 (Objection from creditor D&E Underground, Inc.), Doc. 240 (Objection from Jet Underground LLC), and Doc. 269 (Objection from the U.S. Trustee). Certain objections are in the process of being resolved, e.g., the U.S. Trustee objected to Dentons only conflict checking the twenty largest creditors. Dentons reports it is in the process of running the names of all creditors who filed proofs of claim through its conflicts database and will file a supplemental disclosure as necessary.

5

compensation. In this matter, two "Dentons" firms are involved: Dentons US LLP and Dentons Bingham Greenebaum LLP. Of the partners who seek to be employed by the Committee, two of those (Mr. Hammeke and Mr. Alberts) are at Dentons US LLP and one (Mr. Irving) is at Dentons Bingham Greenebaum LLP. Mr. Irving proposes to be lead counsel for the Committee, and Mr. Hammeke and Mr. Alberts have also participated in significant, but lesser, ways.

The supplemental declaration also reports that Dentons has no active matters with Verizon Sourcing, LLC, but that Dentons Bingham Greenbaum LLP has one active matter with an affiliate of Verizon Sourcing, LLC, referred to as Verizon Communications. One partner in the Dentons Bingham Greenebaum LLP firm represents Verizon Communications in a political lobbying matter. As of August 30, 2021, the Dentons Bingham Greenbaum LLP firm had received $52,500 in fees year to date for that matter, representing 0.13% of that firm's revenue year to date. The supplemental declaration also reports that no Verizon entity sought out Dentons for representation of the Committee.

At hearing on this matter, the Court heard from Debtor that it supports the Committee's application for employment. All counsel also agreed that the blended rate of the partners at Dentons—approximately $500 per hour—was representative of market rates for attorneys in the District of Kansas.

## II. Analysis

Matters concerning the "administration of the estate" are core proceedings under 28 U.S.C. § 157(b)(2)(A), over which this Court may exercise subject matter jurisdiction.[19]

Employment of attorneys by a committee of unsecured creditors is governed by § 1103.[20] Under § 1103(a), "with the court's approval," a committee "may select and authorize the employment . . . of one or more attorneys . . . to represent or perform services for such committee." The statute therefore mandates court approval for retention of counsel but provides no criteria to be applied to make that determination. The Tenth

---

[19] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1 *printed in* D. Kan. Rules of Practice and Procedure (March 2018).

[20] The procedure for employment is provided by Federal Rule of Bankruptcy Procedure 2014. Rule 2014(a) requires an application with "the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." The Court concludes the declaration supporting the application, as supplemented, complies with these standards.

Circuit has stated that this Court has "broad discretion" over applications to employ professionals under § 1103.[21]

### A. Conflicts – Adverse Interest

The first challenge to the application to employ is that Dentons has an impermissible conflict of interest due to its current representation of another Verizon entity (Verizon Communications) while also representing the interests of Verizon Sourcing, LLC as a Committee member. Opponents to the application to employ reason that with "the Verizon matter" being such a large monetary part of Debtor's bankruptcy case, Dentons' tie to Verizon is just too strong.

Under § 1103(b), an attorney employed by a committee "may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case." However, the "[r]epresentation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest." The term "adverse intertest" is not defined in the Code, although case law has generally developed broad guidelines. First, the determination should be

---

[21] *In re Southwest Food Distributors, Inc.*, 561 F.3d 1106, 1112 (10th Cir. 2009).

made objectively,[22] on a case by case basis.[23] Second, courts have generally found an adverse interest when "an economic interest of the person represented by the professional . . . is in conflict with" or "could come into conflict with the interests of the constituency represented by the professional."[24]

In addition, when it comes time for approval of compensation,[25] under § 328(c), a court can deny compensation to a professional if the professional is not disinterested. A disinterested person is defined by the Code as a person who "(A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."[26]

The Court finds no conflict that would prohibit representation under § 1103. A partner at the same law firm as Mr. Irving, lead counsel for the

---

[22] *In re Project Orange Assocs., LLC*, 431 B.R. 363, 370 (Bankr. S.D.N.Y. 2010) (addressing "adverse interest" under § 327 and reviewing case law using an objective, case-by-case approach).
[23] 7 *Collier on Bankruptcy* ¶ 1103.04[2] (Richard Levin & Henry J. Sommer eds., 16th ed.).
[24] *Id.*
[25] The Court recognizes that compensation is a different question than employment, but it is efficient to consider the matter now.
[26] § 101(14).

9

Case 21-10495    Doc# 299    Filed 09/17/21    Page 9 of 18

Committee (of which Verizon Sourcing, LLC is one member), represents a different Verizon entity on a completely unrelated matter. The governing statute forbids employment of professionals who represent other entities with adverse interest in connection with the case,[27] but in this matter, the representation is of a separate Verizon entity and is not even a legal matter, let alone a matter in connection with the case.[28] The representation of Verizon Communications is not related to Debtor's bankruptcy or the contract action underlying the dispute between Debtor and Verizon Sourcing, LLC, the separate matter is not adverse to the Committee's interest in Debtor's bankruptcy case, and the unrelated matter predates Dentons employment by the Committee.[29] There is no adverse economic impact, and an appearance of

---

[27] 7 *Collier on Bankruptcy* ¶ 1103.04 ("The purpose of section 1103(b) is to preclude attorneys and accountants retained by a committee from simultaneously representing another entity in the chapter 11 case if that entity has an adverse interest in connection with the case."); *In re Enron Corp.*, No. 01-16034 (AJG), 2002 WL 32034346, at *6 (Bankr. S.D.N.Y. May 23, 2002) ("The purpose of § 1103(b) is to preclude attorneys and accountants retained by a committee from simultaneously representing another entity in a chapter 11 case with an interest adverse to the bankruptcy estate.").

[28] *See, e.g., In re Pilgrim Medical Center, Inc.*, 574 B.R. 523, 530 (Bankr. D.N.J. 2017) (concluding "the prohibition contained in the first sentence of section 1103(b) is limited 'to the representation of other entities *in connection with the case*. Stated somewhat differently, section 1103(b) 'does not prohibit simultaneous representation of both the committee and the adverse interest, so long as the professional represents the holder of the adverse interest in matters unrelated to the case.'" (internal quotations and citations omitted)).

[29] *In re Enron*, 2002 WL 32034346, at *6 (stating § 1103 "does not require an attorney to cease representing creditors in matters that (i) are unrelated to the bankruptcy case, (ii) are not adverse to the committee's interests in the bankruptcy case, or (iii) pre-date the professional's employment by the committee" (internal citations omitted)).

a conflict, contrasted to an actual conflict, is not enough.[30] There is also no basis to conclude Mr. Irving or the Dentons law firm is not disinterested. If facts arise that cause Dentons to become disinterested, compensation will be in jeopardy, meaning constant vigilance of that risk falls to Dentons. The Court will not disturb the Committee's choice of counsel[31] based on the tenuous argument presented here for a conflict. The Court finds the Committee has satisfied the requirements for employment under § 1103.

### B. Terms of Employment

Under § 328(a), a committee appointed under § 1102 may employ an attorney under § 1103 on "any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." Under § 330(a)(1), a court can then approve reasonable compensation for necessary services for professionals employed under § 1103.[32] That stated, the cost to the estate of counsel for a committee is of course important. As one treatise notes:

---

[30] *See, e.g. In re eToys, Inc.*, 331 B.R. 176, 197 (Bankr. D. Del. 2005) ("While the relationships may raise an appearance of a conflict, they are not actual conflicts and disqualification is not warranted.").
[31] *In re Enron Corp.*, 2002 WL 32034346, at *5 ("Unless contrary to a specific statutory prohibition, the Committee's right to choose its counsel should not be upset. The 'great deference' given [to one's choice of counsel] requires that the Court not react to the conjecture, speculation and unwarranted inferences that have carried over from the pre-petition actions of [a debtor] which causes doubt at every turn regardless of whether the facts warrant such questions.").
[32] Interim compensation may be provided under § 331.

11

> If the case is small or the likely return to creditors is small, retention of counsel may not be cost efficient. In considering approval of counsel, a court will want to be satisfied that the assets of the estate are sufficient to justify retention of counsel. An estate that is administratively insolvent is an outcome that the court and all parties must seek to avoid. On the other hand, if the case does not justify the expense of committee counsel, it may be wise for members of the committee to consider whether they wish to continue to serve on the committee. Committee members owe a fiduciary duty to the constituency they serve. Without committee counsel, it may be more difficult for committee members to discharge that fiduciary duty.[33]

In this case, the Court is convinced that a committee itself is necessary, and that counsel for that committee is necessary, as that will yield the most efficient manner of resolving numerous disputes that are on the horizon.

The Court is aware of a large prepetition transfer to an insider and other payments to insiders.[34] The Court is aware of pending prepetition legal actions[35] and an allegation by Debtor of breach of contract.[36] The Court is aware of disputes concerning perfection of liens, marshalling of assets, and claims disputes.[37] This is a large Chapter 11 case with significant claims. The Court finds the proposed hourly rates of counsel are reasonable; the blended rate is very comparable to what this Court regularly sees and approves. As it always does, the Court will diligently review future proposed

---

[33] 7 *Collier on Bankruptcy* ¶ 1103.03[3][a].
[34] Doc. 80 p. 128, p. 161-62.
[35] *Id.* p. 148-50.
[36] *Id.* p. 15.
[37] Doc. 280.

12

applications for compensation to ensure the Committee is fulfilling its duty to represent the overall interests of the unsecured creditors in the most efficient way possible.

### C. Retroactive Employment

As noted above, employment under § 1103 is a prerequisite to payment under § 330. The timing of that employment is the key question. The application for employment asks for retroactive employment to the date of Dentons' engagement, on July 4, 2021—just over a month before the application to employ was filed on August 9, 2021.

In the Tenth Circuit, professionals who perform work before having an engagement blessed by the bankruptcy court are gambling on whether they will ultimately get paid.[38] In the past, the Tenth Circuit has permitted bankruptcy courts to approve a professional's employment *post facto*,[39]

---

[38] *Interwest Bus. Equip., Inc. v. U.S. Tr. (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 318 (10th Cir.1994) ("any professional not obtaining approval is simply considered a volunteer if [the professional] seeks payment from the estate"). The Tenth Circuit case law discussed herein generally addresses a debtor's counsel's employment under § 327, but the statutory scheme for employment under § 1103 is generally the same, and so the Court assumes the case law discussed is equally applicable. Dentons argues that employment of counsel for a Chapter 11 committee of creditors is different, but this Court considers those differences in the *application* of the tests discussed herein, not in whether the tests apply in the first instance.
[39] This Court aligns with the view of case law concluding that *post facto*, or retroactive, employment is not the same thing as *nunc pro tunc* employment. *E.g.*, *In re Albrecht*, 233 F.3d 1258, 1260 n.4 (10th Cir. 2000) (noting that retroactive court approval of employment is not *nunc pro tunc* approval but is *post facto* relief).

13

"thereby entitling him to seek fees for work performed prior to approval,"[40] but only if "extraordinary circumstances" are present.[41] Extraordinary circumstances do not arise simply from neglect or inadvertence,[42] but instead courts have asked: "whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; and the extent to which compensation to the applicant will prejudice innocent third parties."[43]

The recent Supreme Court decision *Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*[44] may impact this precedent. In *Acevedo*, the Supreme Court held that a federal court may not issue a *nunc pro tunc* order to attempt to make the court record into something that it was not at the time.[45] The Tenth Circuit has not addressed whether the Supreme Court's

---

[40] *In re Schupbach Investments, L.L.C.*, 808 F.3d 1215, 1219 (10th Cir. 2015).
[41] *Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265, 1267 (10th Cir. 1991).
[42] *In re Schupbach Investments, L.L.C.*, 808 F.3d at 1220.
[43] *In re Novinda Corp.*, No. 16-13083 EEB, 2017 WL 1284715, at *2 (Bankr. D. Colo. Mar. 17, 2017) (citing *In re Arkansas Co.*, 798 F.2d 645, 649-50 (3d Cir. 1986)).
[44] 140 S. Ct. 696, 206 L. Ed. 2d 1 (2020).
[45] *Id.* at 700-01 ("Federal courts may issue *nunc pro tunc* orders, or 'now for then' orders, to 'reflect [] the reality' of what has already occurred. 'Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court.' Put colorfully, '[n]unc pro tunc orders are not some Orwellian vehicle for revisionist history — creating 'facts' that never occurred in fact.' Put plainly, the

14

"limits" to the use of *nunc pro tunc* orders will change the extraordinary circumstances test for retroactive employment.

It is important, in this Court's mind, that retroactive approval of the retention of a professional is not a statutory mandate. Neither the Code nor the Federal Rules of Bankruptcy Procedure preclude an award of reasonable compensation under § 330 for services provided prior to entry of the order employing that professional. As one bankruptcy court recently noted:

> The Court finds that neither the Code nor the Rules preclude an award of 'reasonable compensation' or reimbursement for 'actual, necessary expenses' pursuant to section 330 for services rendered prior to an order approving retention of the professional. The only temporal requirement in the Code and Rules is that a professional must have been retained pursuant to section 327 to successfully obtain a court award of compensation. Simply stated, a professional must be retained as required by the statute, but once having been retained, the bankruptcy court is free to compensate him for services rendered to the estate at any time, pre and post-court approval, in accordance with section 330 of the Code.[46]

In other words, the Code does not expressly require the gymnastics of a *nunc pro tunc* order for an attorney to be compensated. It seems to be enough that

---

court 'cannot make the record what it is not.'" (internally cited and quoted cases omitted)).

[46] *In re Benitez*, No. 8-19-70230, 2020 WL 1272258, at *2 (Bankr. E.D.N.Y. Mar. 13, 2020); *see also In re Miller*, 620 B.R. 637, 642 (Bankr. E.D. Ca. 2020) ("[A]lthough an order authorizing employment under § 327 is a prerequisite to awarding compensation under § 330, there is no requirement that compensated services must have been performed only after the effective date of an employment order. These circumstances distinguish *Acevedo* from circuit precedent, which means circuit precedent that recognizes the power to award pre-employment compensation remains unchanged by *Acevedo*.").

15

Case 21-10495    Doc# 299    Filed 09/17/21    Page 15 of 18

the professional is, in fact, employed, and then this Court would apply the heightened scrutiny to pre-employment work at the *compensation* stage under § 330, not at the employment stage of § 327 or § 1103.

As noted by the prior discussed precedent, in the Tenth Circuit's view, the matter was placed at the employment stage as "a matter of judicial administration" that should be performed at the time the bankruptcy court considers employment. The Tenth Circuit stated: "Although neither § 327(a) nor Fed. R. Bank. P.2014—which implements that statute—expressly requires that the approval must precede the attorney's engagement, courts have generally read such a requirement into the statute as a matter of judicial administration."[47]

Regardless, the Court concludes the Supreme Court's recent decision in *Acevedo* addressing *nunc pro tunc* orders is not directly applicable. This Court is not saying Dentons has been approved since its engagement on July 4, 2021, and the record merely needs corrected to reflect that fact. Rather, the Court is analyzing whether Dentons employment is authorized as of the date of its engagement. To do so, the Court looks to see if there are extraordinary circumstances that excuse Dentons not filing its application for employment until August 9, 2021.

---

[47] *See In re Schupbach Investments, L.L.C.*, 808 F.3d at 1219.

16

In this case, the Committee was formed on June 29, and Dentons was interviewed on July 1, 2021. Three days later, on July 4, 2021, Dentons was engaged by the Committee. At that point, Dentons could begin the necessary investigation of the case and conflicts checking. As noted above, this is a large Chapter 11 bankruptcy case, with many moving parts. Just after Dentons was engaged, dispute arose over the makeup of the Committee, and disputes were ongoing concerning several other matters. There was no neglect or inadvertence here. Rather, it simply took a short time for Dentons to complete the necessary steps involved in filing an application for compensation and a supporting Rule 2014 declaration.[48] Dentons, as counsel for the Committee was responsible to seek its employment, but there was significant and extraordinary pressure to hit the ground running. As soon as the Committee was formed, there were challenges to its makeup. In addition, the delay at issue (the gap between July 4 and August 9) is minimal, and there will be no prejudice to innocent third parties because the Committee has and will benefit from competent counsel. In this Court's experience, this

---

[48] *See. e.g.*, *In re ICG Commc'ns, Inc.*, No. 00-4238(PJW), 2001 WL 1820319, at *5 (Bankr. D. Del. Aug. 2, 2001) ("[I]t is not uncommon for a creditors committee to take some time to reach agreement on the retention terms, including compensation arrangements, and this can often produce a 30 to 60[-]day delay between the engagement and the filing of the retention application. To require an immediate application filing could adversely impact on that negotiating process, particularly where, as here, the committee's effective role early in the case called for immediate professional assistance.").

is not a typical Chapter 11 case or a typical creditors' committee, and the Court concludes extraordinary circumstances have been shown to permit employment, retroactive to July 4, 2021.

### III. Conclusion

The Committee's application to employ counsel[49] is granted, effective July 4, 2021. The Committee is authorized to retain and employ Dentons as counsel to the Committee, and Dentons is authorized to perform the services set forth in its application. The fees and costs charged by Dentons are subject to allowance or review by the Court pursuant to interim and final fee applications filed in accordance with §§ 328, 330, and 331. Dentons shall use reasonable efforts to avoid any duplication of services provided by its retained professionals or any extensive forays into avenues that will not bring value commensurate to cost to the creditors of this case. Dentons shall also periodically review its conflicts system to ensure no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered, Dentons shall promptly file a supplemental declaration as required by Rule 2014(a).

**It is so Ordered.**

###

---

[49] Doc. 197.

18